**In re the Marriage of Fouad Joseph FARAG, Appellant–Respondent,**

v.

**Risha L. (Farag) DeLAWTER, Appellee–Petitioner.**

**No. 52A02–0009–CV–586.**

Court of Appeals of Indiana.

Feb. 22, 2001.

Jim Brugh, Logansport, IN, Attorney for Appellant.

Donald G. Fern, Fern, Grund & Grund, Peru, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Fouad Joseph Farag (Father) appeals the trial court's modification of physical custody to Risha DeLawter (Mother) of their son, A.A. Father presents two issues, which we combine and restate as: Whether the trial court abused its discretion in modifying its previous custody order.

We affirm.

### Facts and Procedural History

The marriage of Mother and Father ended on May 3, 1995, when the Miami Superior Court entered a decree of dissolution. The parties' marriage settlement agreement was incorporated into the decree. The agreement provided the following custody arrangement regarding their son, A.A., who was born August 11, 1994:

5. That the parties have given serious consideration to the future welfare of their Child and agree that the Wife and Husband shall have joint custody and control of the minor Child [A.A.]. The father Fouad Joseph Farag will have custody of the child on the days the mother is working. For example, if the mother works Monday, Tuesday, and Wednesday, the father has custody from Monday until Thursday morning. An additional example is if the mother works Monday and Wednesday, the father has custody Monday to Tuesday morning and Wednesday to Thursday morning. The father will have custody every other weekend from Friday at 5:00 p.m. to Sunday at 8:00 p.m. The father and the

mother will alternate holidays with the exception of Christmas where Christmas Eve and Christmas Day will be alternated. Each parent will enjoy two weeks of vacation with the child each year.

R. at 13.

The parties thus agreed to joint physical custody of A.A. in addition to joint legal custody. This intention was further evidenced in the agreement by the fact that neither party was obligated to pay child support because of the evenly divided custody arrangement.

This joint custody arrangement initially worked quite well, apparently due to the parties' on-again/off-again relationship (including cohabitation), the infancy of A.A., and A.A.'s nearby grandparents. But then, Father remarried in 1998 and Mother remarried in May of 1999. In June 1999, Mother informed Father that her new husband had lost his job and that they would likely be moving away from Peru. On July 6, 1999, Mother left a note for Father to inform him she and A.A. had moved to Bedford, Indiana, and to provide him with their new address. The Miami County Clerk's Office was also provided with a letter.

On July 19, Father filed a motion with the trial court seeking custody of A.A. Mother cross-petitioned for custody on July 23. During the pendency of this matter, the parties continued joint physical custody. A.A. moved back and forth between Peru and Bedford at two-week intervals. He attended kindergarten in Peru when he stayed with Father, and he was home-schooled by Mother in Bedford during her two-week visitations.

On July 14, 2000, following a hearing, the trial court ordered that joint legal custody of A.A. was to continue, but that Mother would have primary physical custody, reserving the right of Father "to visit with and have such child visit with him at all reasonable and proper times." R. at 54. The trial court further ordered Father to pay $92.00 per week in child support. Father appeals.

### Discussion and Decision

▬ Child custody determinations fall squarely within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *Clark v. Clark*, 726 N.E.2d 854, 856 (Ind.Ct.App.2000), *trans. denied.* On review, we will not reweigh evidence, judge the credibility of the witnesses, or substitute our judgment for that of the trial court. *Id.* We will not reverse unless we find the trial court's decision is against the logic and effect of the facts and circumstances before the court or the reasonable inferences to be drawn therefrom. *Id.*

▬ Much of Indiana's statutory language regarding child custody and modification issues was drafted with the presumption that one of the parents would have primary physical custody. For example, a custodial parent intending to relocate out of state or at least one hundred miles away must file notice of his or her intention to do so with the trial court. Ind.Code § 31–17–2–23 (1998).[1] The purpose of this notice requirement is to afford the trial court with an opportunity to modify the original custody order, if necessary. *Hanks v. Arnold*, 674 N.E.2d 1005, 1007 (Ind.Ct.App.1996). The Indiana Code imposes no burden of proof on the party intending to relocate, and was not enacted to punish parents who move. *Swonder v. Swonder*, 642 N.E.2d 1376, 1380 (Ind.Ct. App.1994).

▬ Father asserts that Mother did not comply with the notice requirement and that her noncompliance afforded her an unfair advantage in the custody proceeding. Specifically, he contends that the tri-

---

1. Because neither parent enjoyed primary physical custody, this statute arguably does not apply to the facts of this case, so long as the joint physical custody arrangement will not be jeopardized. As hereinafter noted, the joint physical custody arrangement continued throughout the pendency of the modification petitions.

al court's award of custody to Mother is rewarding her "unilateral decision" to "render joint custody infeasible." Appellant Brief at 21. We find this argument to be without merit.

We do not condone Mother's extremely short notice to Father and the trial court on the same day of the move. However, Father presented no evidence that lack of notice, by itself, interfered with his parental rights or that an earlier notice would have assisted his effort to obtain physical custody of A.A.[2] Despite Father's allegations that he was ambushed by Mother's unilateral decision, the record shows that Father was aware of Mother's imminent move approximately two to three weeks in advance. In addition, there is no indication that Mother attempted to undermine Father's relationship with A.A. or that she moved to Bedford to hinder the existing custody arrangement. In fact, the parties continued of their own volition to exercise joint physical custody during the pendency of their petitions to modify. We find that the circumstances surrounding Mother's short notice of intent to relocate present no occasion for reversal of the trial court's determination.

■ Father also argues that the trial court erroneously placed the burden of proof on him in the modification hearing.[3] He asserts that, because Mother was the party who created the necessity for a custody modification by moving, she should have the burden of proving that the move created a substantial change of circumstances that make it in A.A.'s best interest for Mother to have primary physical custody. We disagree.

The relevant portions of the custody modification statute provide that:

(a) The court may not modify a child custody order unless:

(1) the modification is in the best interests of the child; and

(2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 of this chapter and, if applicable, section 8.5 of this chapter.

(b) In making its determination, the court shall consider the factors listed under section 8 of this chapter.

Ind.Code § 31–17–2–21 (Supp.2000). The factors listed in section 8 are as follows:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) The child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

Ind.Code § 31–17–2–8 (Supp.2000).

Mother's move to Bedford clearly created a change in circumstances so substan-

---

**2.** The trial court reviewed and denied Father's emergency, ex-parte petition to modify custody.

**3.** Moreover, although Father presented evidence first at the hearing on modification, which might have been indicative of his bearing the burden of proof, he made no objection to preserve the issue on appeal. R. at 58.

tial as to make the existing joint physical custody order impractical and against the best interests of A.A. However, as stated above, her relocation in and of itself did not impose any burden of proof upon her. *Swonder,* 642 N.E.2d at 1380.

Neither party disputes that the custody order had to be modified. This necessity was further emphasized by the impracticality of five-year-old A.A. spending two weeks in one school environment in Peru alternating with another school environment in Bedford. This situation was clearly not in A.A.'s best interests. It almost goes without saying that permanence and stability are considered best for the welfare and happiness of the child. *Lamb v. Wenning,* 600 N.E.2d 96, 98 (Ind.1992).

Given the facts of this case, permanence and stability could not be accomplished through joint physical custody. Consequently, the trial court was compelled to consider the totality of the evidence to determine which parent was in a better position to serve A.A.'s best interests. In this joint physical custody case where one parent moved away, this was the burden *each* parent bore in presenting his or her evidence. As a result, we find that Father's assertion amounts to nothing more than an invitation to reweigh the evidence that we must decline.

Our review of the record shows that A.A. is very fortunate to have two loving, responsible, and capable parents. However, we find no indication that the trial court abused its discretion in awarding primary physical custody of A.A. to Mother. We therefore affirm.

Affirmed.

SHARPNACK, C.J., and SULLIVAN, J., concur.