## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 21 2016, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
| --- | --- |
| Russell T. Clarke, Jr. | Michael R. Auger |
| Emswiller, Williams, Noland & Clarke, P.C. | Franklin, Indiana |
| Indianapolis, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| In re the Marriage of R.E.F., | April 21, 2016 |
| *Appellant-Respondent,* | Court of Appeals Case No. 41A01-1508-DR-1021 |
| v. | Appeal from the Johnson Circuit Court |
| A.M.A. f/k/a A.M.F., | The Honorable K. Mark Loyd, Judge |
| *Appellee-Petitioner.* | Trial Court Cause No. 41C01-1108-DR-581 |

**Najam, Judge.**

# Statement of the Case

R.E.F. ("Father") appeals the dissolution court's final decree dissolving Father's marriage to A.M.A. ("Mother"). Father presents the following issues for our review:

    1.    Whether the dissolution court erred when it ordered that legal custody of the parties' child, H.F. ("Child"), would alternate annually.

    2.    Whether the dissolution court erred when it ordered that Mother would exercise parenting time with Child every other week.

    3.    Whether the dissolution court erred when it did not order Mother to participate in weekly counseling for a period of years.

    4.    Whether the dissolution court's order denying Father's motion to correct error is confusing and requires clarification.

We affirm.

# Facts and Procedural History

Father and Mother married in 1999. Each had children from previous relationships, and the parties had one child together, H.F. ("Child"), born February 23, 2000. In 2011, Mother filed a petition for dissolution of the marriage. Following a final hearing, which concluded on March 3, 2015, the dissolution court entered the following relevant findings and conclusions:

9. [Child] was born February 23, 2000. She is the fifteen (15)[-]year[-]old daughter of the parties.

10. Both parties are seeking sole physical and legal custody of [Child]. Dr. Richard Lawlor and Dr. Bart Ferraro provided child custody evaluations.

11. [Child] testified that she is happy to have two (2) parents but does not like the tension or stress of the custody dispute between them. Although [Child] expressed love for [Father], she wishes to live with [Mother] and have little or not [sic] parenting time with her Father.

12. [Child] objects to [Father] recording their conversations but understands that he will likely continue to record based upon his concerns that there have been numerous false allegations made against him by [Mother].

13. [Child] complained that her Father will not let her walk to the park or around the neighborhood alone, and he has passwords to lock certain television programs and X-box.

14. [Child] testified she has a good relationship with her half-sibling, [C.F.], and sees him during parenting time.

15. [Child] is a student at Greenwood High School where she participates in the choir concert, soccer, and color guard.

16. [Child] and [Father] participated in joint counseling with Amy Egler, LMFT. Ms. Egler reported to Dr. Ferraro as part of his custody evaluation that [Child] had demonstrated a positive adjustment to the relationship with her Father during Spring Break vacation and regressed in the weeks following her return to the Petitioner's home. Ms. Egler noted in his [sic] regard that [Child] herself stated "it's fine if we're away." Ms. Egler questioned whether [Child]'s regression on this and other

occasions could be due to [Mother]'s influence because she perceives [Child] and her mother to be overly aligned.

17. Dr. Ferraro reviewed Dr. Lawlor's custody evaluation and included Dr. Lawlor's findings in the second evaluation. Dr. Lawlor recommended the continued sharing of joint legal custody and the sharing equally of physical custody/parenting time, the latter in a 2:2:5:5 fashion. Dr. Lawlor also recommended the continued involvement of a Parenting Coordinator.

18. Dr. Ferraro recommended that the parties share joint physical custody with the schedule of a week on/week off basis with transitions to occur on Fridays after school or after Friday extracurricular involvement. Dr. Ferraro also recommended that the parties alternate sole legal custody on an annual basis in order to mitigate the potential or the likelihood that one parent could misuse his or her authority in any sustained or ongoing fashion. Dr. Ferraro also strongly recommended for the parties to continue to work with a Parenting Coordinator through [Child]'s 18th birthday.

19. Mr. Richard Wacker was the initial court[-]appointed Parenting Coordinator. The parties first met with Mr. Wacker in a joint session on March 9, 2012, to resolve issues relating to communication, the exchange location, and additional parenting time for [Father]. It was necessary at that time for Mr. Wacker to urge [Mother] to provide [Father] with her current address and not to deactivate her working phone number without first contacting the PC or providing [Father] an alternative working number.

20. Prior to those agreements, [Mother] had consistently blocked communication attempts from [Father] to [Child].

21. Mr. Wacker reported that although [Mother] continuously alleged incidents of domestic violence[,] he could not [corroborate] any such incident.

22. Mr. Wacker further reported that despite the voluminous number of police reports and number of complaints filed with the Department of Child Services (DCS), no complaint or allegation of misconduct on the part of [Father] had ever been substantiated by either agency.

23. Mr. Wacker reported that there had been little progress at the joint sessions by having both parties in the same room due to the high level of conflict between them.

24. Mr. Wacker's final report, filed June 9, 2014, indicated that [Mother]'s claims of stalking, harassment, physical and mental abuse from [Husband] were unsubstantiated and that he had not received any document or tangible proof of [Mother]'s allegations.

25. On August 13, 2014, the Court appointed Dr. John Ehrmann, Jr., Psy.D.[,] as Successor Parenting Coordinator. Dr. Ehrmann is a clinical psychologist, licensed in the State of Indiana. He met with the parties on a number of occasions.

26. Dr. Ehrmann reported that a final PC meeting was scheduled for January 13, 2015[,] at 9:30 A.M., but [Mother] failed to attend on time, even though she had confirmed the appointment by email dated January 7, 2015. Though appearing over two (2) hours late, [Mother] was outraged and screaming in the presence of other patients at the Doctor's office.

27. Dr. Ehrmann submitted to the Court his Parenting Coordination Summary of February 18, 2015. It stated in pertinent parts as follows:

"*In general, parenting coordination has been ineffective in resolving difficulties between these two parents. For the most part, sessions are dominated by [Mother] who attempts to use the time to denounce [Father] in any and all ways possible. In essence, reaching an agreement on virtually anything between the two is impossible. There has been much more contact via email. Unfortunately, this had done nothing but triangulate the situation for this parenting coordinator. [Mother] has often provided incomplete and not necessarily accurate information in great abundance. In essence, when she is not supported in her wishes regarding the provision of medical care or education issues regarding [Child], she proceeds unilaterally and does as she chooses.*

*For the most part[, Father] has been quite cooperative and responsive. He, too, is extremely frustrated with this process[,] however. Having reviewed the reports of the previous parenting coordinator, Richard Wacker, Esquire, many of the issues and concerns addressed by Mr. Wacker appear to be valid. In the opinion of this parenting coordinator/psychologist, although this is not an attempt to formulate a formal diagnosis, [Mother] acts and behaves in ways consistent with a mixed personality disorder. Most prominent i[s] a pattern of histrionic behavior. Unfortunately, she continues to behave in ways that clearly interfere in [Father]'s relationship with [Child]. It is quite clear that [Child], also interviewed by this psychologist/parenting coordinator, generally reflects her mother's opinions. She is strongly reinforced by her mother for her resistance to her father, in ways that reflect a pattern of parental alienation.*"

28. When asked to define mixed personality disorder, Dr. Ehrmann explained it is a combination of all personality disorders as defined by the Diagnostic and Statistical Manual of Mental Disorders.

29. Dr. Ehrmann explained histrionic behavior is marked by a pattern of emotional overreactions, narcissism, and entitlement, and as it relates to [Mother], "*she will have what and when she wants, and if she does not get it, Husband will pay the price.*"

30. Dr. Ehrmann explained that [Child] used some of the very words her mother used to describe her father. Dr. Ehrmann observed [Mother]'s tone of voice and non-verbal facial expressions that showed contempt and disrespect for [Father].

31. Dr. Ehrmann's summary stated, "*The primary purpose of this summary is to inform the Court that parenting coordination services are essentially ineffective and not, in any way, an appropriate way to resolve the difficulties and challenges these two parents have in attempting to meet the needs of their daughter. There is simply no effective way in which co-parenting is possible. A sole custody model would appear to have significant advantages in better advocating for this child without the constant conflict between these parents.*

*Instead, what appears to be needed here, in addition to a sole custody model, is an experienced trained guardian ad litem who can monitor the situation and continue advocacy for [Child]. In this fashion, all future orders of the Court can be used as a model to hold both parents accountable as necessary and, again, continue advocacy for [Child].*

*Finally, in the opinion of the parenting coordinator/psychologist, there is an urgent need to address the issues here and move things forward in a more controllable and appropriate fashion as soon as possible.*["]

32. Throughout these proceedings the parents have failed miserably in their ability to willingly and ably communicate and cooperate to advance [Child]'s welfare. Parenting Coordination reports are fraught with endless disagreements over simple decisions that ultimately would benefit [Child].

33. Whether their actions are motiv[ated] by acquiring a perceived advantage as to the ongoing litigation or to further their individual agenda related to their marital conflict, it is unclear. The Court, though, is bothered by a pattern of behavior perpetuated by each, but particularly [Mother].

34. [Child] testified that the lingering nature of the divorce was causing her stress by placing her in the middle of her parents' conflict. Despite [Child]'s wishes and the numerous admonishments from the various entities above mentioned, [Father] has apparently given those considerations little weight. His obsession with recording communications has resulted in his being found in direct contempt of Court for unauthorized recording of the evidentiary hearings.

35. Though provided preliminary custody of the child, [Mother] has used that privilege as a tool to deprive [Father] of meaningful parenting. No co-parenting is encouraged by her. Her testimony at the final hearing that "I want to be the parent in charge" amplifies her disconnect. She clearly desires custodial care to control rather than to nurture any meaningful relationship between the child and her father. Even when confronted with consequences of her behavior, she chooses to retain her self-serving perspective by becoming even more entrenched in her attitude and actions.

36. [Child] was adamant that she wanted to reside with her mother and have limited contact with [Father]. The Court is mandated to consider [Child]'s wishes and equate [sic] the appropriate weight to said testimony given [Child]'s age. However, [Mother] has discouraged [Child] from having a relationship with her father, in effect "alienating" her from him. Dr. Ehrmann alluded to the same in his Parent Coordination Summary report. The Court simply cannot ignore the toxic effect of [Mother]'s conduct on the relationship between the child and her father.

37. Ultimately, neither party has made a compelling presentation supporting their ability to effectively place the child's best interests above their own. However, the Court is somewhat encouraged by [Father]'s counseling efforts as recent progress appears to have been made on his part. For this reason, the Court finds that it is in the best interest of the child for

[Father] to have primary physical custody. Based upon the recommendation of Dr. Ferraro, [Mother] shall have primary legal custody in even[-]numbered years and [Father] shall have primary legal custody in odd[-]numbered years.

38. The Court is not incline[d] to restrict [Mother]'s parenting time with her daughter. The mandates of I.C. [§] 31-17-4-2 have not been met in that [Child]'s physical health is not endangered nor will her emotional development be significantly impaired if the Court awards [Mother] parenting time. As such, the Court orders that [Mother] receive parenting time pursuant to the Indiana Parenting Time Guidelines which are adopted herein in their entirety.

39. Based upon the child's desires and the parties' ongoing conflicts, the Court finds that a deviation in the Parenting Time Guidelines is appropriate as follows:

> i) beginning the first Friday after issuance of this Decree, the parties shall alternate parenting time on a weekly basis with [Father] exercising the first full week;
>
> ii) parenting time exchanges shall occur each Friday at 6:00 P.M. or after any school extracurricular activity;
>
> iii) there shall be no mid-week parenting time exchanges and no additional parenting time opportunities absent specific written agreement of the parties;
>
> iv) holiday parenting time is vacated and shall occur as it falls on each parent's visitation period; and,

v) parenting time during extended vacation periods, (i.e., Fall, Spring, Winter) shall follow the Indiana Parenting Time Guidelines.

40. By separate order of this Court dated March 5, 2015, the Court appointed Joseph Walterman, Esq. as [Child]'s *Guardian Ad Litem*. In representing [Child]'s interests herein, the Court anticipates the *Guardian Ad Litem* will provide reports from time to time in order to chronicle the parties' adherence to this Order, advance issues and concerns raised by [the] ward and report future conduct that may endanger [Child]'s mental welfare or the integrity of her physical person. Pursuant to the percentages set forth below in the Child Support Worksheet, [Mother] shall be responsible for 15% and [Father] for 85% of the costs associated with Mr. Walterman's appointment herein.

Appellant's App. at 19-24 (emphases original). Father filed a motion to correct error, which the dissolution court denied in relevant part. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[4] The dissolution court entered findings and conclusions sua sponte. Our standard of review in such cases is well-settled:

> [W]e apply a two-tiered standard of review. *Vega v. Allen County Dep't of Family & Children (In re J.V.)*, 875 N.E.2d 395, 402 (Ind. Ct. App. 2007)[, *trans. denied*]. We may not set aside the findings or judgment unless they are clearly erroneous. Ind. Trial R. 52(A); *Perrine v. Marion County Office of Child Servs.*, 866 N.E.2d 269, 273 (Ind. Ct. App. 2007). In our review, we first consider whether the evidence supports the factual findings. *Perrine*, 866 N.E.2d at 273. Second, we consider whether the findings support the judgment. *Id.* "Findings are clearly erroneous only

when the record contains no facts to support them either directly or by inference." *Id.; Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. *Perrine,* 866 N.E.2d at 273. We give due regard to the trial court's ability to assess the credibility of witnesses. T.R. 52(A). While we defer substantially to findings of fact, we do not do so to conclusions of law. *Perrine,* 866 N.E.2d at 274. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Id.*

*Zivot v. London*, 981 N.E.2d 129, 134-35 (Ind. Ct. App. 2012).

[5] Child custody determinations fall squarely within the discretion of the dissolution court and will not be disturbed except for an abuse of discretion. *Troyer v. Troyer*, 987 N.E.2d 1130, 1145 (Ind. Ct. App. 2013), *trans. denied*. "'The trial court is in a position to see the parties, observe their conduct and demeanor, and hear their testimony; therefore, its decision receives considerable deference in an appellate court.'" *Id.* (quoting *Trost-Steffen v. Steffen*, 772 N.E.2d 500, 509 (Ind. Ct. App. 2002), *trans. denied*). We will not reverse the trial court's decision unless it is against the logic and effect of the facts and circumstances before it or the reasonable inferences drawn therefrom. *Id.* "'On review, we will not reweigh evidence, judge the credibility of the witnesses, or substitute our judgment for that of the trial court.'" *Id.* (quoting *Farag v. DeLawter*, 743 N.E.2d 366, 368 (Ind. Ct. App. 2001)).

## *Indiana Code Section 31-17-2-8*

In making the custody determinations here, the dissolution court was required to follow Indiana Code Section 31-17-2-8, which provides:

> The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there is no presumption favoring either parent. The court shall consider all relevant factors, including the following:
>
> (1) The age and sex of the child.
>
> (2) The wishes of the child's parent or parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
> > (A) the child's parent or parents;
> >
> > (B) the child's sibling; and
> >
> > (C) any other person who may significantly affect the child's best interests.
>
> (5) The child's adjustment to the child's:
>
> > (A) home;
> >
> > (B) school; and
> >
> > (C) community.
>
> (6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

### Issue One: Legal Custody

Father first contends that the dissolution court erred when it ordered that the parties alternate legal custody of Child on an annual basis. Father maintains that that arrangement "violates Indiana's prohibition against an automatic change of custody." Appellant's Br. at 15. In particular, Father states that the dissolution court's order on legal custody "fails to require a substantial change of circumstances of the factors considered by the trial court in an initial custody order as required by I.C. § 31-14-13-6."[1] *Id.* at 16.

In support of his contention on this issue, Father cites our supreme court's opinion in *Bojrab v. Bojrab*, 810 N.E.2d 1008 (Ind. 2004). But we find *Bojrab* inapposite. In *Bojrab*, the dissolution decree provided as follows:

> [The wife] is granted the custody of the parties' minor children. . . . The best interests of the children are served by requiring that they remain in the Allen County, Indiana community. Accordingly, the grant of custody of the parties' minor children is subject to maintaining their residence in Allen

---

[1] We note that Father cites the wrong statute in support of this contention. Indiana Code Section 31-14-13-6 pertains to custody determinations in paternity actions, not dissolution proceedings. Father should have cited Indiana Code Section 31-17-2-21.

County, Indiana. In the event the [wife] decides to relocate outside Allen County, Indiana, without the agreement of the [husband] or further order of this court, custody of the children shall be granted to the [husband]. . . .

*Id.* at 1011. Both parties appealed, and, on transfer, our supreme court addressed the issue of whether the dissolution court erred when it conditioned Wife's custody of the parties' children on her continuing to reside in Allen County. Our supreme court held:

> We agree that a trial court may not prospectively order an automatic change of custody in the event of any significant future relocation by the wife. The decree does contain language ordering that, in the event the wife unilaterally decides to relocate outside Allen County, Indiana, "custody of the children shall be granted to the [husband]." This language is inconsistent with the requirements of the custody modification statute, Indiana Code § 31-17-2-21. Immediately preceding such language declaring a conditional future change of custody, however, the decree states: "the grant of custody of the parties' minor children is subject to maintaining their residence in Allen County, Indiana." There is a significant difference between the two phrases. One purports to automatically change custody upon the happening of a future event; the other declares that the present award of custody is conditioned upon the continuation of the children's place of residence. *While the automatic future custody modification violates the custody modification statute, the conditional determination of present custody does not.* The latter is a determination of present custody under carefully designated conditions. Upon a violation of said conditions by the wife as custodial parent, the basis for the custody order is undermined, and the husband may seek a change in custody pursuant to the custody modification statute. This is consistent with the operation of Indiana Code § 31-17-2-23, which establishes procedures that apply when a person who

has been awarded child custody intends to relocate outside Indiana or more than 100 miles from the existing residence. The statute calls for a notice by the relocating party and, upon request of either party, "a hearing for the purposes of reviewing and *modifying*, if appropriate, the *custody*, visitation, and support orders." Ind. Code § 31-17-2-23(b) (emphasis added). Construed in this manner, the trial court's custody order is not improper. We understand this to be the position of the Court of Appeals, which we find correct.

*Id.* at 1012-13 (some emphasis added).

[9]     Again, Father maintains that the dissolution court's order in this case constitutes an "automatic future custody modification" in violation of the custody modification statute. *See id.* at 1012. We disagree. The legal custody order is not based on a future change of the factors relevant to modification of custody under Indiana Code Section 31-17-2-21. Rather, the dissolution court carefully crafted a legal custody arrangement, whereby the parties alternate legal custody, based upon the court's determination of the relevant statutory factors at this time. If a substantial change of circumstances occurs in the future, either party may seek modification of the legal custody order. We hold that, given the evidence that the parties would be unable to share joint legal custody, and given that the dissolution court found that awarding sole legal custody to one parent for the short remainder of Child's minority was not warranted, this carefully-crafted order is appropriate and consistent with relevant statutory and case law.

Father also contends that alternating legal custody is not in Child's best interests. In particular, Father maintains that "[Child]'s boundaries and expectations will, at a minimum, shift every year when legal custody changes." Appellant's Br. at 18. And Father asserts that the order "places [Child] in a situation where she may develop a personality disorder and where she will become more exposed to Mother's behavior to alienate her from Father." *Id.* But Father's contentions amount to a request that we reweigh the evidence, which we will not do.

The dissolution court found that "neither party has made a compelling presentation supporting their ability to effectively place the child's best interests above their own." Appellant's App. at 23. Accordingly, the dissolution court adopted Dr. Ferraro's recommendation that legal custody alternate between Father and Mother annually. In support of that recommendation, Dr. Ferraro stated as follows:

> Both parents appear largely able to make sound decisions as relates to their daughter's educational and medical needs and it is unlikely that [Child] would suffer were either of them to be authorized to do so, particularly so long as the decision maker remained involved in their own individual and, for [Father], parent-child therapy so as to maximize the likelihood that [Child]'s voice would be heard in decisions made on her behalf in these arena[s]. . . .

*Id.* at 163. Dr. Ferraro further stated that the

> alternating structure is established in part so as to mitigate any potential or likelihood that with Sole Legal Custodial Authority,

one parent could misuse their authority in a fashion less attuned to the needs and best interests of their daughter in any sustained or ongoing fashion.  This custodial structure is also recommended in an effort to establish each parent's viability as an equal and capable parent, despite their current views to the contrary. . . .

*Id.* at 163-64.

[12] The dissolution court's findings and conclusions relevant to legal custody show that it carefully considered the evidence, including the recommendations of psychologists, as well as the parties' testimony.  We cannot say that the legal custody order is not in Child's best interests.  The dissolution court did not abuse its discretion when it ordered that the parties alternate legal custody annually.

### Issue Two:  Parenting Time

[13] Father next contends that the dissolution court erred when it ordered that Mother exercise parenting time for one week every other week.  In particular, Father maintains that the parenting time order cannot be reconciled with the dissolution court's Finding No. 36, which provides as follows:

> [Child] was adamant that she wanted to reside with her mother and have limited contact with [Father].  The Court is mandated to consider [Child]'s wishes and equate [sic] the appropriate weight to said testimony given [Child]'s age.  However, [Mother] has discouraged [Child] from having a relationship with her father, in effect "alienating" her from him.  Dr. Ehrmann alluded to the same in his Parent Coordination Summary report.  The

> Court simply cannot ignore the toxic effect of [Mother]'s conduct on the relationship between the child and her father.

Appellant's App. at 22-23. Again, we cannot agree.

[14] Indiana Code Section 31-17-4-1 provides that a parent not granted custody of a child is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development. Father asserts that, because the dissolution court found that Mother has a "toxic effect" on Child's relationship with Father, Appellant's App. at 23, and because Dr. Ehrmann testified that Mother's role in alienating Child from Father was "detrimental" to Child, Tr. at 381, the dissolution court was required to restrict Mother's parenting time.

[15] In responding to Father's motion to correct error on this issue, the dissolution court stated as follows:

> Much like this entire case, [Father]'s motion reflects his continued difficulty focusing on his child's best interests versus his own. As Finding #11 and 32 and 33 and 34 and 36 indicate, this is a teen [who] is most comfortable with her mother, even if that is due to [Mother]'s alienation attempts[. I]t makes little sense at this stage to add to the young lady's stress by over[ly-]restricting time with a parent she is most comfortable with.

Appellant's App. at 36. In Finding No. 11, the dissolution court found that Child "wishes to live with [Mother] and have little or not [sic] parenting time with her Father." *Id.* at 19. Finding No. 32 states in relevant part that both

parents have "failed miserably in their ability to willingly and ably communicate and cooperate to advance [Child]'s welfare." *Id.* at 22. And Findings No. 33 and 34 also refer to bad behavior by both parties with respect to parenting Child.

[16]     Thus, the dissolution court's findings show that both Mother and Father have engaged in behaviors that have negatively impacted Child. While the dissolution court found that Mother's "pattern of behavior" is of "particular" concern, *id.* at 22, the court also appears to have properly considered Child's wishes in the matter when it stated that it did not want to "add to [Child]'s stress by over[ly-]restricting time" with Mother, *id.* at 36. In other words, given Child's clear wish that she live with Mother full time, the dissolution court concluded that depriving Child of ample time with Mother would likely harm Child. We cannot say that the dissolution court abused its discretion when it awarded Mother one week of parenting time every other week.

### Issue Three: Counseling

[17]     Father contends that the dissolution court abused its discretion when it did not adopt Dr. Ferraro's recommendation that "Mother participate in extensive counseling for a period of years, not months." Appellant's Br. at 21. Father's argument in support of this contention is similar to his argument in support of the first two issues. The dissolution court was entitled to accept or reject Dr. Ferraro's recommendations in whole or in part. Father has not demonstrated an abuse of discretion on this issue.

***Issue Four: Clarification of Order on Motion to Correct Error***

[18]     Finally, Father contends that the dissolution court's order on his motion to correct error "is inconsistent with the custody order." *Id.* at 23. In particular, in response to Father's argument that the dissolution court erred in ordering that the parties alternate legal custody, the dissolution court stated as follows:

> The Court finds no uncorrected error of law or fact associated with this claim. [Father] is not incorrect that there is little if any evidence that [Mother] can co-parent with [Father] and equally there is meager evidence that [Father]'s abilities are any more advanced than [Mother]'s. This was one of the primary reasons the Court chose to: (1) place custody with the Father; and (2) to assure that [Child] had the opportunity to benefit from both parents' input.

Appellant's App. at 36. Father maintains that the dissolution court's reference to placing "custody" with him is "unclear." Appellant's Br. at 23. In particular, Father states that the dissolution court's ruling on the motion to correct error "only makes sense if it is awarding Father legal custody to make decisions on behalf of [Child], but still allow parenting time with Mother because [Child] is closely bonded and aligned with her." *Id.* at 24.

[19]     While it is somewhat confusing that the dissolution court would reference physical custody in a response to Father's argument regarding legal custody, we cannot say that remand is necessary to clarify the order. The dissolution court awarded Father physical custody of Child, with Mother exercising generous parenting time, and the court ordered the parties to alternate legal custody annually. Because the dissolution court's order is clear on these issues, we

cannot say that the court's order on Father's motion to correct error needs clarification.

## *Conclusion*

[20] The dissolution court here was faced with extremely difficult decisions in a very close case on the questions of legal and physical custody. As the court's findings indicate, both Father and Mother have exhibited poor behavior with regard to parenting Child since their separation. While the dissolution court emphasized Mother's deficiencies in parenting skills, the court was also critical of Father's parenting skills. And, given Child's age, the court could not ignore Child's sincere wishes that she live with Mother full time.

[21] No dissolution decree can entirely rectify or ameliorate the stressful and distressful family relationships on full display in this record. While another court may well have entered a different decree, that does not mean that the court in this case abused its discretion. The dissolution court fashioned orders on legal custody and parenting time that accommodate the wishes of the teenaged child while balancing the role of each parent in her life. We cannot say that the dissolution court abused its discretion in its orders on legal custody of Child or parenting time. And the dissolution court's order on Father's motion to correct error does not require clarification.

[22] Affirmed.

Robb, J., and Crone, J., concur.